UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WINDMILL WELLNESS RANCH, L.L.C., | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-19-CV-1211-OLG (HJB) |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, et al., | § § § § | |
| Defendants. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the following motions pending in this case:

- The Motion to Dismiss Plaintiff's Fifth Amended Complaint filed by the Anthem Defendants[1] (Docket Entry 142);

- The Motion to Dismiss Plaintiff's Fifth Amended Complaint filed by CareFirst of Maryland, Inc. (Docket Entry 143);

- The Supplemental Motion to Dismiss filed by the JW Blue Defendants[2] (Docket Entry 144);

---

[1] The "Anthem Defendants" refers collectively to Defendants Blue Cross of California, Community Insurance Company, Healthy Alliance Life Insurance Company, Anthem Health Plans of Virginia, Inc., and Empire HealthChoice Assurance, Inc. (*See* Docket Entry 142, at 1.)

[2] The "JW Blue Defendants" refers collectively to Blue Advantage Administrators of Arkansas ("BAA"); Blue Cross and Blue Shield of Florida, Inc. d/b/a Florida Blue ("Florida Blue"); Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBSMA"); Blue Cross and Blue Shield of North Carolina ("BCBSNC"); BlueCross and BlueShield of South Carolina ("BCBSSC"); and Horizon Blue Cross Blue Shield of New Jersey ("Horizon"). (*See* Docket Entry 144, at 1.)

- The Joint Motion to Dismiss Plaintiff's Fifth Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by the Highmark Defendants[3] (Docket Entry 145); and

- The Motion to Dismiss Plaintiff's Fifth Amended Original Complaint filed by Blue Cross and Blue Shield of Alabama ("BCBSAL") (Docket Entry 146).

This case was referred to the undersigned for consideration of pretrial matters. (*See* Docket Entry 148.) For the reasons set out below, I recommend that the motions to dismiss (Docket Entries 142, 143, 144,[4] 145, and 146) be **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**.

## I. Jurisdiction.

Plaintiffs bring claims under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.,* as well as related state law breach-of-contract claims. The Court has original subject matter jurisdiction over federal claims pursuant to 28 U.S.C. § 1331, and it exercises supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367. I have authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b).

## II. Background.

This case involves a dispute for the alleged non-payment or underpayment of numerous medical claims. This background section describes the procedural history of the case and then summarizes the factual allegations in the operative complaint.

---

[3] The "Highmark Defendants" refers collectively to Highmark Inc., Highmark Blue Cross and Blue Shield of Delaware, Inc., Blue Cross of Idaho, and Blue Cross and Blue Shield of Kansas. (*See* Docket Entry 145).

[4] By separate order entered today, the JW Blue Defendants' motion (Docket Entry 144) was held in abeyance in part. *See* notes 12 and 13, *infra*.

2

A.      *Procedural History*.[5]

Plaintiff Windmill Wellness Ranch, L.L.C., ("Windmill") originally filed this lawsuit against Blue Cross Blue Shield of Texas, a Division of Health Care Service Corporation ("BCBSTX") on October 9, 2019, seeking to recover payment as an out-of-network provider for medical claims submitted by Windmill's former patients. (Docket Entry 1.) BCBSTX filed two motions to dismiss, which the District Court has already addressed. (*See* Docket Entries 17 and 32.) After Windmill settled with BCBSTX as to certain claims (*see* Docket Entries 48, 51), the District Court granted Windmill leave to file its Third Amended Complaint to include claims against out-of-state Blue Cross and Blue Shield ("Blue Card") entities. (Docket Entry 49; *see* Docket Entry 134, at ¶ 1).

Defendants moved to dismiss the Third Amended Complaint on multiple grounds, including Windmill's lack of standing. In response, Windmill moved for leave to amend its complaint again, to join as "real parties in interest" the Patients[6] and plan beneficiaries to whom its services were provided; Windmill contended this would cure the standing issue raised by all Defendants. (Docket Entry 117.) The District Court granted Windmill's motion to amend, directed the Clerk of Court to file the Fourth Amended Complaint attached to Windmill's motion, and denied Defendants' motions to dismiss as moot. (Docket Entry 128, at 6.)

In October 2022, Plaintiffs were granted leave to file a Fifth Amended Complaint (the current operative pleading in the case). (Docket Entry 134.) Plaintiffs' Fifth Amended Complaint

---

[5] A more detailed discussion of the procedural history can be found in the District Court's prior orders. (*See* Docket Entries 17, 32, 128.)

[6] The "Patients" refers collectively to the individual Plaintiffs identified by their initials in Exhibits 1 through 18 attached to the Fifth Amended Complaint. (*See* Docket Entries 134-1 to 134-17 and 135-1.)

asserts only two causes of action: (1) a § 1132(a)(1)(B) ERISA benefits claim and (2) a breach of contract claim. (*Id.* at ¶¶ 94, 110.) Defendants have again filed motions to dismiss Plaintiffs' claims. (Docket Entries 142 to 146.) Each of the motions has been fully briefed.

### B. *Factual Allegations*.

Windmill operates a psychiatric and substance abuse treatment center in Canyon Lake, Texas. (Docket Entry 134, at ¶¶ 2, 24.) The Patients received treatment at Windmill's facility between 2017 and 2019, and they are the insureds and/or beneficiaries of the medical claims at issue in this case. (*Id.* at ¶ 44.)

Upon admission to Windmill's facility, each Patient "executed a set of documents that included: (1) an assignment of benefits and; (2) a document appointing Windmill as the patient's authorized personal representative to take all actions necessary to pursue administrative appeals and/or legal actions on behalf of the patient."[7] (Docket Entry 134, at ¶ 34.) Based on these documents, Windmill contends that it has standing to pursue plan benefits "not only as the assignee of the plan participant under ERISA, but also as the appointed personal legal representative" of each Patient. (*Id.* at ¶ 35.)

Windmill was considered an out-of-network provider for the services rendered to the Patients. (Docket Entry 134, at ¶ 29.) Prior to treating each Patient, Windmill "contacted the BCBS entity to confirm with certainty whether the patient had out of network benefits available for the services being sought, what categories of medical services were covered, and the extent of that coverage." (*Id.* at ¶¶ 29, 75–76.) "[T]he Blue Card plans provided varying representations of what would be paid for services provided to the members, even at times for members insured by

---

[7] Plaintiffs attach copies of these documents to the Fifth Amended Complaint. (*See* Docket Entries 136-1, 136-2, 137-1, 137-2, 138-1, 138-2.)

the same group plan." (*Id.* at ¶ 30.)  For example, in some cases the Blue Card plan stated the basis for reimbursement would be Usual and Customary Rates ("UCR"); in other cases, Medicare rates, a multiplier based on Medicare rates, or an "allowable rate" was stated as the basis.  (*Id.* at ¶ 36.)  No Blue Card plan has been willing to disclose how its reimbursement calculations are determined.  (*Id.* at ¶ 32.)

Plaintiffs identify provisions concerning coverage for mental health or substance abuse treatment from the plan documents they received from certain Defendants.  (Docket Entry 134, at ¶ 98.)  Plaintiffs also allege that none of the plans contain information from which they could "determine the amount of benefits, or even a reasonable estimate, of what the benefits actually were for mental health or substance abuse treatment." (*Id.*)  Upon information and belief, Defendants failed to reimburse Plaintiffs properly and in accordance with the plans.  (*Id.* at ¶¶ 88, 98–99.)

BCBSTX issued Explanations of Benefits ("EOBs") on behalf of the Blue Card plans.  (Docket Entry 134, at ¶ 36.)  "The EOBs provide no specificity or clarity as to the way the claims were adjudicated, paid, underpaid or the basis of that reimbursement, if any at all." (*Id.* at ¶ 38.)  "BCBS has paid some claims at higher rates, while drastically underpaying other claims for the same services to a Blue Card plan member under the same health plan." (*Id.*)

Plaintiffs allege information regarding the specific claims as to each Defendant.  (Docket Entry 134, at ¶¶ 45–61.)  For example, they allege:

> For the services provided to Alabama Blue Card members as identified on Exhibit 1 as attached hereto, Windmill's usual and customary charges for services provided to 4 members totaled $220,325.00. To date, the plan has tendered reimbursement of $7,437.00, or 3 percent (3%) of Windmill's usual and customary charges.

5

(*Id.* at ¶ 45.) Plaintiffs also provide a spreadsheet identifying certain information pertaining to the claims at issue, including the Patient's initials, the amount of the charges incurred, the amount of reimbursement received, and the insurance subscriber ID. (*See* Docket Entries 134-1 to 134-17.)

The Fifth Amended Complaint alleges that both Windmill and the Patients "have repeatedly requested plan documents to determine plan benefits," but their requests were ignored. (Docket Entry 134, at ¶ 40.) "Windmill has sent requests via certified mail with written authorization of the insured beneficiary, requesting the complete plan document for both medical/surgical and mental health substance use disorder benefits. Windmill has often additionally requested that BCBS provide specific plan provisions that support any excluded coverage for services." (*Id.* at ¶ 41.) The Blue Card plan Defendants have largely been unwilling to disclose this information, "even when authorized in writing by their insured members." (*Id.* at ¶ 43.)

As set out in more detail below, Defendants seek to dismiss Plaintiffs' claims on numerous grounds, including lack of standing, lack of personal jurisdiction, failure to exhaust administrative remedies, and failure to state a claim. (*See* Docket Entries 142–46.)

### III. Legal Standards.

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6). The legal standard applicable to each rule is set out below.

#### A. *Rule 12(b)(1) Standard.*

Rule 12(b)(1) authorizes dismissal for lack of subject-matter jurisdiction. A motion challenging a plaintiff's standing to bring an ERISA action is a jurisdictional matter properly addressed under Rule 12(b)(1). *See Cell Sci. Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 262 (5th Cir. 2020).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted). However, to show standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [a court may] presume that general allegations embrace those specific facts that are necessary to support the claim." *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 450 (5th Cir. 2022).

A court may "dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Picket v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029 (5th Cir. 2022) (citation omitted).

B.   *Rule 12(b)(2) Standard.*

Rule 12(b)(2) governs dismissal for lack of personal jurisdiction. "Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv n'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)). In considering a personal jurisdictional challenge, the Court may consider affidavits or other materials outside the complaint. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). The Court accepts as true all uncontroverted allegations in the complaint, and conflicts between outside materials must be resolved in the plaintiff's favor. *Turner v. Harvard MedTech of Nevada, LLC*, 620 F. Supp. 3d 569, 573 (W.D. Tex. 2022) (citation omitted). The Court must first determine that it has personal jurisdiction over

a defendant before making any decision as to the merits of that defendant's case. *Id.* (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

    **C.**     *Rule 12(b)(3) Standard.*

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant challenges venue, "the plaintiff has the burden of demonstrating that the chosen venue is proper." *Zurich Am. Ins. Co. v. Tejas Concrete & Materials, Inc.*, 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013) (citation omitted). "Viewing all the facts in a light most favorable to the plaintiff, the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 492–93 (5th Cir. 2018) (citations omitted).

    **D.**     *Rule 12(b)(6) Standard.*

Rule 12(b)(6) provides that a complaint may be dismissed if it "fails to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) is considered in conjunction with Federal Rule of Civil Procedure 8, which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Henley v. Biloxi H.M.A., L.L.C.*, 48 F.4th 350, 353 (5th Cir. 2022) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While the court must accept the facts in the complaint as true, it will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal quotation

marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) (citation omitted).

In deciding a Rule 12(b)(6) motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022) (citation omitted). "The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff." *Morgan v. Swanson*, 659 F.3d 359, 370 n.17 (5th Cir. 2011) (en banc) (quoting *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005)).

### IV. Analysis.

The Anthem Defendants seek to dismiss Plaintiffs' claims for lack of standing, lack of personal jurisdiction, failure to exhaust administrative remedies, and failure to state a claim. (Docket Entry 142, at 2–3.) The remaining defendants join and adopt the Anthem Defendants' arguments, except as otherwise noted in their respective pleadings. (*See* Docket Entry 143, at 1 (CareFirst); Docket Entry 144, at 1 (JW Blue Defendants); Docket Entry 145, at 5 (Highmark Defendants); Docket Entry 146, at 2 (BCBSAL)). Certain Defendants make additional arguments in support of dismissal. (Docket Entries 143, 144, 146.)

This Report and Recommendation first addresses the common arguments contained in Anthem's motion and then addresses the additional arguments.

#### A. *Defendants' Common Arguments.*

The Anthem Defendants, joined by others, argue that the Fifth Amended Complaint should be dismissed because (1) Windmill lacks standing to pursue the claims, (2) the Court lacks personal

9

jurisdiction as to any state-law claim, (3) Plaintiffs fail to plead exhaustion of administrative remedies, and (4) Plaintiffs fail to state a claim for ERISA benefits or breach of contract. (Docket Entry 142, at 23.)

      1.    *Plaintiffs' standing*.

Defendants first argue that the Fifth Amended Complaint does not sufficiently add any unnamed patient/plan beneficiary to this lawsuit. (Docket Entry 142, at 10–11.) Defendants previously raised this argument before the District Court in their opposition to Windmill's motion for leave to substitute and to file its Fourth Amended Complaint. (*See* Docket Entry 126, at 8.)[8]

Notwithstanding Defendants' argument, the District Court granted Windmill leave to amend the complaint. (*See* Docket Entry 128, at 6.) In the same order, the District Court noted that *either* Windmill *or* the plan beneficiaries could recover for the alleged nonpayment and underpayment of claims submitted to Defendants. (*Id.* at 5.) Accordingly, once both Windmill and the Patients were joined as plaintiffs, at least one of them would have standing to bring this action. *Id.* (citing *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit.")) The same holds true even in the face of anti-assignment clauses asserted by a majority of Defendants.[9] Even if a Patient could not assign a claim to Windmill, the Patient has standing to proceed. (*See* Docket Entry 128, at 5.)

---

[8] With respect to this issue, the Fourth Amended Complaint followed the same form as the Fifth Amended Complaint—Patients were identified by initials in attached exhibits. (*Compare* Docket Entry 117-2 *with* Docket Entry 134.)

[9] The Anthem Defendants did not present anti-assignment clause arguments, but the JW Blue Defendants (except for Horizon), the Highmark Defendants, and BCBSAL do. (*See* Docket Entry 144, at 2; Docket Entry 145, at 8; Docket Entry 146, at 1.)

10

The undersigned will not reconsider the District Court's ruling. Patients have been properly added as Plaintiffs to this case and either Patients or Windmill have standing to assert the claims. Accordingly, Defendants' motions to dismiss for lack of standing should be denied.

2. *Personal jurisdiction.*

Defendants challenge the Court's personal jurisdiction over any alleged state law claim.[10] (Docket Entry 142, at 8–9.) Plaintiffs' response does not address the state-claim jurisdictional question, focusing instead on the ERISA-based claims. (*See* Docket Entry 155, at 4–7.)

Title 29 U.S.C. § 1132(e) provides for nationwide personal jurisdiction for any ERISA-based claim. As to state breach-of-contract claims, the Court may have personal jurisdiction over those Defendants who contracted with a Plaintiff domiciled in Texas, as the claim would arise out of that contract. *See E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 298 (5th Cir. 2020). The Fifth Amended Complaint, however, does not address this issue; it does not distinguish between the ERISA and non-ERISA claims, nor does it identify the domicile of any Plaintiff or the relevant acts of any Defendant relating to an alleged contract. *See Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) ("When determining whether a court has personal jurisdiction over a breach of contract claim," the focus is on "those acts which relate to the formation of the contract and the subsequent breach.") Without this information, the Court cannot determine whether personal jurisdiction exists regarding the state law claims. As Plaintiffs have the burden to establish such jurisdiction, their pleadings are defective in this regard.

For these reasons, Defendants' motions should be granted as to lack of personal jurisdiction over the state law claims. However, Plaintiffs should be allowed leave to amend. In so amending,

---

[10] Highmark Defendants do not adopt the personal jurisdiction argument. (Docket Entry 145, at 6.)

11

Plaintiffs must identify which of the Plaintiffs' claims are non-ERISA claims and identify by name each Patient/plan beneficiary and their domicile, and otherwise state how specific jurisdiction is met as to each state law claim. *See Danziger*, 24 F.4th at 495 (explaining that when plaintiff brings multiple claims arising out of different forum contacts, it must establish specific jurisdiction for each claim).

### 3. *Failure to plead exhaustion of administrative remedies.*

Defendants move to dismiss Plaintiffs' claims for failure to plead exhaustion of administrative remedies. (Docket Entry 142, at 18.) "Generally, the Fifth Circuit requires that 'claimants seeking benefits from an ERISA plan must first exhaust available administrative remedies under the plan before bringing suit to recover benefits.'" *Ford v. Freemen*, 388 F. Supp. 3d 692, 708 (N.D. Tex. 2019) (citation omitted). However, because exhaustion of administrative remedies is an affirmative defense and not a jurisdictional bar, plaintiffs "need not 'specially plead or demonstrate exhaustion in their complaints' to avoid 12(b)(6) dismissal." *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 969 (E.D. Tex. 2011) (citation omitted). Instead, exhaustion is better addressed by way of a properly supported motion for summary judgment. *Ford*, 388 F. Supp. 3d at 708. Accordingly, the Court should deny Defendants' motion to dismiss on exhaustion grounds without prejudice to reconsideration at the summary judgment stage.

### 4. *Failure to state a claim.*

Defendants' arguments regarding Plaintiffs' failure to state a claim for relief have already been addressed by the District Court. As the Court previously explained in detail, to survive dismissal, Plaintiffs must either (1) allege specific plan provisions that Defendants allegedly violated, or (2) specifically describe their good-faith efforts to obtain the relevant plan documents from Defendants, explain why such documents have not been obtained, and explain their good-

12

faith basis for believing that the plan documents provide for additional reimbursement. (*See* Docket Entry 17, at 12.) These two alternatives are applicable both to Plaintiffs' ERISA claims and to their breach-of-contract claims. *See Innova*, 892 F.3d at 731–32 (permitting plaintiff's state law contract claim to proceed notwithstanding fact that plaintiff was unable to identify specific provision(s) that defendant had allegedly breached). Reading Plaintiffs' complaint as a whole, and with inferences in their favor, Plaintiffs have met the alternative requirements set out in the District Court's order.

Plaintiffs allege that Defendants have either underpaid or refused to pay the medical claims at issue. (Docket Entry 134, at ¶ 37.) They assert that ERISA plans typically contain provisions for reimbursing providers such as Windmill at the UCR. (*Id.* at ¶¶ 82, 101). As to each Defendant, Plaintiffs detail the percentage of reimbursement received compared to Windmill's UCR, most of which ranged between one and nine percent; Plaintiffs substantiate these allegations by providing a spreadsheet which includes each claim identified by patient initials, the amount of the charges incurred, the amount of reimbursement received, the date of service, and the insurance subscriber ID. (*Id.* at ¶¶ 45–61; *see* Docket Entries 134-1 to 134-17.)

For five of the plans at issue, Plaintiffs identify language regarding coverage for the type of treatment Windmill provided; Plaintiffs allege that the plans do not state "any tangible standard for determining the amount that the plan will pay" for the services and that, upon information and belief, Defendants failed to reimburse Plaintiffs properly and in accordance with the plan. (Docket Entry 134, at ¶¶ 82, 88, 98–99.) As to those claims for which Plaintiffs lack plan documents, they allege that they have repeatedly requested plan documents, but that their requests were largely ignored. (*Id.* at ¶¶ 40–43.) Plaintiffs also allege that Defendants provided varying representations

13

of how they would be reimbursed and paid different rates for the same services to members under the same health plan.  (*Id.* at ¶¶ 30, 33, 38.)

Defendants make two principal arguments in challenging the sufficiency of Plaintiffs' pleadings.  First, they argue that Plaintiffs have not alleged that the plan language provided as an example in the Fifth Amended Complaint is representative of all the plans at issue.  (Docket Entry 142, at 15.)  Reviewing the complaint in its entirety, however, Plaintiffs have alleged sufficient facts to allow the inference that the plan language included in the Fifth Amended Complaint is representative of the other plans.  *See Innova*, 892 F.3d at 728 ("[A] complaint should be read in its entirety and not parsed piece by piece to determine whether each allegation, in isolation, is plausible.")

Second, Defendants argue that, given the number of Defendants and different plans at issue, Plaintiffs' allegations are too global and non-specific; Defendants contend that Plaintiffs are required to show specific terms of each plan that were violated or specific requests for plan documents that were made to each Defendant.  (Docket Entry 142, at 16–17.)  But while some specificity is required, the level of specificity demanded by Defendants goes beyond the requirements that a plaintiff must satisfy to adequately state an ERISA benefits claim.  As the Fifth Circuit explained in *Innova*, "plaintiffs alleging claims under 29 U.S.C. § 1132(a)(1)(B) for plan benefits need not necessarily identify the specific language of every plan provision at issue to survive a motion to dismiss."  892 F.3d at 729.  Although Plaintiffs' Fifth Amended Complaint necessarily groups Defendants together in a number of instances, in conjunction with the attached detailed spreadsheets it "pleads sufficient facts to put Defendants on notice of the claims for which each particular defendant is liable." *MedARC, LLC v. Anthem, Inc.*, No. 3:20-CV-3689-N-BH,

2021 WL 3477352 (N.D. Tex. July 9, 2021), *report and recommendation adopted,* 2021 WL 3473269 (N.D. Tex. Aug. 6, 2021).

In sum, Plaintiffs identify language from the plan documents in their possession and they allege their good-faith effort to obtain the remaining documents. Plaintiffs also allege additional facts supporting an inference that Defendants may have breached the plan provisions and/or violated terms of the plans—allegations similar to the ones that the Fifth Circuit found relevant in *Innova* when determining that the federal pleading standard had been satisfied. *See Innova*, 892 F.3d at 729. That is not to say Plaintiffs' claims will necessarily be meritorious; Defendants may prevail at a later stage in the proceedings. Viewing the complaint's allegations in the light most favorable to Plaintiffs, however, the Court should find that Plaintiffs have sufficiently stated claims for ERISA benefits and breach of contract to survive a Rule 12(b)(6) motion.

    **B.**    ***Additional Requests in Remaining Motions.***

Additional grounds for dismissal are presented by CareFirst, the JW Blue Defendants, and BCBSAL. These are addressed below.

        1.    *CareFirst's Motion*.

CareFirst seeks dismissal of Plaintiffs' claims against it based on improper allegation of venue. (Docket Entry 143, at 4–5.) Plaintiffs make the following venue allegation:

> Venue is proper and appropriately established in this Court under 28 USC § 1391(b)(2), as the named defendants have members that (i) reside in this Federal District, (ii) routinely conduct business in this District through Blue Cross Blue Shield of Texas acting as their agent in Texas, and (iii) a substantial part of the events, acts or omissions that give rise to the claims herein occurred in the Western District of Texas.

(Docket Entry 134, at ¶ 22.) CareFirst argues that Plaintiffs err by citing the general venue provisions of § 1391(b)(2) because it does not apply to ERISA claims; instead, Plaintiffs were

15

required to employ the ERISA venue provision set out in 29 U.S.C. § 1132(e)(2).[11] (Docket Entry 143, at 4.) This assertion fails. Contrary to CareFirst's argument, "[t]he ERISA venue provision is not exclusive." 14D WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3825 (4th ed. 2018). In pleading venue, a plaintiff may use the ERISA provision or "may employ the venue options provided by the general venue statute." *Id.*; *see Gilmour, Tr. for Grantor Trusts v. Blue Cross & Blue Shield of Alabama*, No. CV SA-17-CA-518-FB, 2019 WL 2147580 (W.D. Tex. Mar. 6, 2019) (addressing similar venue argument). Because Plaintiffs' allegations are sufficient under the general venue statute, CareFirst's motion should be denied.

    2.  *JW Blue Defendants' Motion*.

The JW Blue Defendants present additional arguments regarding personal jurisdiction.[12] They seek dismissal of Plaintiffs' claims against Florida Blue because the benefit plans for the Florida Blue members are non-ERISA-governed plans and Plaintiffs otherwise fail to sufficiently allege personal jurisdiction. (Docket Entry 144, at 3.) Plaintiffs do not dispute the argument, responding instead by suggesting a transfer of venue: "to expedite the orderly disposition of the claims at issue, as to the individual policyholder's claims, Plaintiffs will agree to a transfer of venue to the Middle District of Florida for the further and final adjudication of those claims."

---

[11] The ERISA venue provision provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where the defendant resides or may be found, and process may be served in any other district where the defendant resides or may be found.

[12] The JW Blue Defendants also separately seek dismissal for failure to state a claim, arguing that review of the applicable plans in their entirety "would show that Plaintiffs' allegation of breach … is unsupported by the plans themselves." (Docket Entry 144, at 11.) This Report and Recommendation does not consider the issue, but the matter has been held in abeyance pending further briefing as set out in in a separate order entered today. (Docket Entry 166.)

(Docket Entry 157, at 2.)  As JW Blue points out in reply, however, Plaintiffs never move to sever Florida Blue from the case or to transfer their claims against Florida Blue to another federal district. (Docket Entry 164, at 2.)  Nor do they provide specifics that would justify such a transfer.  In such circumstances, dismissal is appropriate.

JW Blue provides a recent case from the Southern District of Texas that is instructive in this regard.  In *Linder v. Assured Enterprises, Inc.*, the plaintiff sued multiple defendants, two of whom asserted lack of personal jurisdiction.  No. H-20-1363, 2020 WL 6922644 (S.D. Tex. Nov. 5, 2020).  In response, the plaintiff sought to sever the claims against the two defendants and to transfer them to another venue.  *Id.*  The court rejected the plaintiff's request because he had not provided any details to support his request.  *Id.*  *Linder* provides guidance here; indeed, dismissal in this case is even more appropriate, as Plaintiffs have filed neither a motion to sever or to transfer venue.

For these reasons, the Court should dismiss Plaintiffs' claims against Florida Blue for lack of personal jurisdiction.

   3. *BCBSAL's Motion*.

BCBSAL seeks to sever and compel arbitration of certain claims and dismiss others for lack of jurisdiction.  (Docket Entry 146.)  These arguments are uncontested and should be granted.

     a. Severance and arbitration.

BCBSAL seeks to sever Patient M.M.'s claims, stay the claims, and compel arbitration. (Docket Entry 146, at 8.)  BCBSAL asserts that Patient M.M.'s plan contains an arbitration clause "requiring arbitration of 'any claim that arises out of or relates to the plan,' 'any claim that involves any relationships that result from or relate in any way to the plan (including claims involving persons or organizations who are not parties to the plan,' 'any claim that alleges any conduct by

17

you or us, regardless of whether related to the plan,' or 'any claim that concerns the validity, enforceability, scope, or any other aspect of this arbitration provision.'" (*Id.* at 9.) Plaintiffs respond that they agree to a severance and stay of Patient M.M.'s claims so that arbitration may be conducted. (Docket Entry 159, at 11.)

In light of Plaintiffs' concession, the Court should grant BCBSAL's motion, sever Patient M.M.'s claims, stay the claims, and compel arbitration.

       b.  Sovereign immunity.

BCBSAL moves to dismiss Plaintiffs' claims pertaining to Patient S.R. under Rule 12(b)(1) "because the State Employees' Health Insurance Plan is an agency of the State of Alabama and is entitled to sovereign immunity." (Docket Entry 146, at 7.) "If sovereign immunity exists, then the court lacks both personal and subject matter jurisdiction to hear the case and must enter an order of dismissal." *de Sanchez v. Banco Cent. De Nicaragua*, 770 F.2d 1385, 1389 (5th Cir. 1985). Plaintiffs do not contest BCBSAL's assertion of immunity, and they indicate they will cooperate with BCBSAL to address and remove the claims. (Docket Entry 159, at 11.)

Because BCBSAL is entitled to sovereign immunity as to Patient S.R.'s claims, the motion to dismiss should be granted in this regard.

**V. Conclusion and Recommendation.**

Based on the foregoing, I recommend as follows:

- As to their jointly raised arguments, Defendants' motions to dismiss (Docket Entries 142, 143, 144, 145, and 146) be **GRANTED IN PART**, **DENIED IN PART**, and **DENIED WITHOUT PREJUDICE IN PART**. As to Defendants' arguments regarding standing and failure to state a claim, the motions should be **DENIED**. As to Defendants' argument regarding exhaustion of administrative remedies, the motions should be **DENIED**

**WITHOUT PREJUDICE** to reconsideration at the summary judgment stage. As to Defendants' arguments regarding the Court's lack of personal jurisdiction over the state law claims, the motions should be **GRANTED**. Plaintiffs' state law claims should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiffs should be given an opportunity to amend their complaint to properly allege personal jurisdiction as to these claims.

- CareFirst's motion (Docket Entry 143) should be **DENIED** as to improper venue.

- The JW Blue Defendants' motion (Docket Entry 144) should be **GRANTED** as to the Court's lack of personal jurisdiction over the Florida Blue claims, and Plaintiffs' claims against Florida Blue should be **DISMISSED**.[13]

- BCBSAL's motion (Docket Entry 146) should be **GRANTED** as to its specific additional arguments. Patient S.R.'s claims should be **DISMISSED** and Patient M.M.'s claims should be **SEVERED** and **STAYED** pending arbitration.

- As to any argument not specifically addressed in this recommendation, the motions should be **DENIED**.

VI. **Instructions for Service and Notice of Right to Object.**

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.

---

[13] The JW Blue Defendants' additional arguments regarding the failure to state a claim have been held in abeyance. *See* note 12, *supra*.

Written objections to this Report and Recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

The party shall file the objections with the clerk of the court and serve the objections on all other parties. Absent leave of Court, **objections are limited to twenty (20) pages in length**. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections.

A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on June 6, 2023.

_____
Henry J. Bemporad
United States Magistrate Judge